Slip Op. 06-190

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

**UNITED STATES,**

      Plaintiff,

      v.

**JEAN ROBERTS OF CALIFORNIA, INC.,**

      Defendant.

</td><td>

**Before:  Timothy C. Stanceu, Judge**

**Court No. 03-00212**

</td></tr>
</table>

## OPINION

[Granting plaintiff's application for judgment by default against defendant in the amount of $242,375.46]

Dated: December 22, 2006

*Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Kenneth S. Kessler*); *Erik Gantzel*, Office of the Associate Chief Counsel, Bureau of Customs and Border Protection, United States Department of Homeland Security, of counsel, for plaintiff.

Stanceu, Judge: Plaintiff United States commenced this action pursuant to Section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (2000) ("Section 592"), against defendant Jean Roberts of California, Inc. ("Jean Roberts") on April 30, 2003, to recover a civil penalty for alleged negligence by Jean Roberts arising from 34 consumption entries of knit acrylic/polyester blankets imported from Mexico in 1997 and 1998, for which Jean Roberts claimed preferential tariff treatment under the North American Free Trade Agreement ("NAFTA").  *See* North American Free Trade Agreement Implementation Act of 1993, Pub. L. No. 103-182, 107 Stat.

2057 (1993); 19 U.S.C. §§ 3311 *et seq.* (2000).  On December 1, 2003, the United States filed Plaintiff's Request for Entry of Default on the grounds that Jean Roberts repeatedly failed to appear by licensed counsel and defend the allegations pleaded in the complaint.  Default was entered by the Office of the Clerk of the Court of International Trade on December 3, 2003 pursuant to USCIT Rule 55(a) "for failure to obtain counsel in order to defend the allegations set forth in the complaint."  Entry of Default (appended to Pl.'s Req. for Entry of Default).  On February 20 and July 23, 2004, the United States applied for judgment by default pursuant to USCIT Rule 55(b).  Various communications between defendant and the office of the Clerk of the Court occurred, yet defendant did not retain counsel.  On March 30, 2005, the court ordered defendant to show cause why judgment by default should not be entered against it for failure to answer the complaint in this action according to the court's rules.  *United States v. Jean Roberts of Cal., Inc.*, 29 CIT __, Slip Op. 05-41 (Mar. 20, 2005).  The purpose of this order was to ensure that Jean Roberts was provided "a full and fair opportunity to retain legal counsel and defend itself in response to the allegations set forth in the Complaint."  *Id.* at 2.  Through its order, the court granted Jean Roberts until May 31, 2005 to obtain licensed counsel and to respond to the court's order to show cause.  Because defendant, despite repeated notifications that it must retain counsel to avoid a default judgment, has neither caused an attorney to enter an appearance in this action nor responded to the show cause order, the court will enter a default judgment against Jean Roberts in the amount of $242,375.46.  This amount represents the statutory maximum penalty of two times the loss of revenue alleged in plaintiff's complaint.

## I. BACKGROUND

A complete background of the underlying administrative penalty proceeding and procedural history of the penalty collection action is set forth in the court's Opinion and Order dated March 30, 2005. Familiarity with plaintiff's claim for penalty is therefore presumed. For purposes of this opinion, the court will restate those facts that are relevant to plaintiff's application for judgment by default and, specifically, a determination of the amount of a default judgment to be entered. Determining that amount has required the court to resolve issues that arose because the United States Customs Service[1] ("Customs") committed certain errors, discussed in this opinion, during the administrative penalty proceeding that it must conduct under Section 592(b) to perfect a claim for which a penalty can be recovered in a proceeding in the Court of International Trade. Those errors became apparent upon the court's review of documents provided with plaintiff's application for judgment by default and the court's review of additional, related documents from the administrative record that the court requested the plaintiff to provide in order to resolve questions raised by information in the documents plaintiff provided. The court's review disclosed, specifically, errors committed by Customs pertaining to the penalty claim as stated in the notice of penalty that Customs sent to Jean Roberts and the mitigation decision it issued under 19 U.S.C. § 1618. Additionally, Customs erred in refusing to consider defendant's claim for waiver of penalty under the Small Business Regulatory

---

[1] The United States Customs Service since has been renamed as the United States Bureau of Customs and Border Protection. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 1502, 116 Stat. 2135, 2308-09 (2002); Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. No. 108-32, at 4 (2003).

Enforcement Fairness Act of 1996 and defendant's request for mitigation based on inability to pay.

Plaintiff's complaint and application for judgment by default are based on claims that Jean Roberts, in the entry documentation, falsely described the imported blankets as "woven" when in fact they were knit, and that Jean Roberts entered the merchandise according to a claim for NAFTA preferential duty rates for which the merchandise did not qualify. Pl.'s Compl. ¶¶ 6-7. Plaintiff claims that the description of the blankets as "knit" was material because the blankets, if woven, would have qualified for the NAFTA preference. *Id.* ¶ 8.

On November 29, 2000, Customs issued a "Pre-Penalty Notice" pursuant to 19 U.S.C. § 1592(b)(1) (2000). According to the Pre-Penalty Notice, defendant "failed to exercise reasonable care and competence throughout the importation process of thirty-four consumption entries" filed at the port of Otay, Mesa, California from August 29, 1997 through July 20, 1998. Pl.'s Notice of Filing of Supplemental Documentation in Supp. of Pl.'s Application for Default J. in Resp. to the Ct.'s Telephonic Req. Ex. 1 at 2 ("Pl.'s Supplemental Documentation"). The Pre-Penalty Notice cited a potential loss of revenue of $121,508.52, which it supported by attaching a worksheet identified as a "Schedule of Entries," and notified Jean Roberts that Customs was contemplating issuance of a civil penalty of $243,017.04, an amount equal to the statutory maximum penalty of two times the potential loss of revenue, as provided by Section 592(c)(3)(A)(ii). *Id.*; *see* 19 U.S.C. § 1592(c)(3)(A)(ii). Defendant did not respond to the Pre-Penalty Notice and later alleged that it never received it. Pl.'s Supplemental Documentation Ex. 3 at 2 n.1.

On February 26, 2001, Customs issued to Jean Roberts an administrative penalty claim under 19 U.S.C. § 1592(b)(2) in the form of a "Notice of Penalty." The Notice of Penalty demanded payment of a monetary penalty of $121,508.52. Pl.'s Supplemental Documentation Ex. at 2. On May 14, 2001, Jean Roberts responded to the Notice of Penalty by filing a petition requesting mitigation. *Id.* Ex. 3. On April 19, 2002, Customs issued to Jean Roberts a mitigation decision under 19 U.S.C. § 1618. The mitigation decision denied mitigation and stated that "the penalty against petitioner is affirmed at one (1) times the loss of revenue, or $121,508.52" and ordered Jean Roberts to pay the loss of duties in the amount of $121,508.52, and the penalty, an additional $121,508.52. *Id.* Ex. 4 at 10. Jean Roberts did not pay the mitigated penalty or the duties, which duties later were paid by the importer's surety in response to a demand by Customs under the importer's bond.

In the complaint filed in this action on April 30, 2003, Customs requested judgment for the statutory maximum penalty for negligence, an amount equal to two times the actual loss of revenue. In an exhibit to the complaint, Customs stated the actual loss of revenue to be $121,187.73, resulting in a penalty claim in the amount of $242,375.46. Pl.'s Compl. ¶ 9. On February 20 and July 23, 2004, the United States, pursuant to USCIT Rule 55(b), applied for judgment by default for a penalty in the amount of $242,375.46, plus post-judgment interest and costs. Pl.'s Application for Default J. at 25.

## II. DISCUSSION

In an action brought to recover on a penalty claim brought under Section 592, "all issues, including the amount of the penalty, shall be tried de novo[.]" 19 U.S.C. § 1592(e)(1). However, a defaulting defendant is deemed to admit all facts well-pleaded in the complaint

against it. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (explaining that "the court should . . . accept[] as true all of the factual allegations of the complaint, except those relating to damages."). The facts pleaded in plaintiff's complaint, as discussed herein and in the court's Opinion and Order dated March 30, 2005, are sufficient to state a factual basis for a claim for penalty under Section 592. Accordingly, in consideration of the facts that plaintiff has pleaded and the showing that plaintiff has made in the application for judgment by default, including the showing made by means of the documents appended thereto, the court's inquiries are whether plaintiff has established as a matter of law its entitlement to a judgment by default, and if so, in what amount a default judgment should be entered by the court.

From a review of the relevant statutory provisions, when applied to the facts as alleged in the complaint and deemed to be admitted, and from a review of the application for judgment by default and supporting documents of record, the court concludes that plaintiff has established its entitlement to a judgment by default based on penalty liability under Section 592(a). In particular, the court concludes that the alleged misdescription of the blankets as "woven" was material for purposes of Section 592(a) because the blankets, had they actually been woven, would have qualified for the NAFTA duty preference. The court next considers procedural issues, including the effect of the various errors made by Customs in conducting the administrative proceeding under Section 592.

Before seeking to recover a penalty in the Court of International Trade, Customs must perfect its penalty claim in the administrative process required by Section 592 by issuing a pre-penalty notice and a notice of penalty. 19 U.S.C. § 1592(b)(1)-(2). Customs must include certain information in every pre-penalty notice, including "the amount of the proposed monetary

penalty[.]" *Id.* § 1592(b)(1)(A)(vi). After the issuance of the pre-penalty notice and consideration of any representations made by the importer, Customs must issue a "written penalty claim," *i.e.*, a notice of penalty, specifying any changes in the information provided in the pre-penalty notice. *Id.* § 1592(b)(2). Following the notice of penalty, the importer is afforded "a reasonable opportunity," pursuant to 19 U.S.C. § 1618, to make "representations, both oral and written, seeking remission or mitigation of the monetary penalty" assessed in the notice of penalty. *Id.* Customs must respond to the representations by issuing a decision under the authority of 19 U.S.C. § 1618, which provides for the mitigation of penalties. *See id.* The importer then either may pay the penalty amount stated in the mitigation decision or may refuse to pay, thereby rejecting the offer of mitigation and leaving it to the United States to initiate an action on behalf of Customs for recovery of any monetary penalty claimed under § 1592. *See id.* § 1592(b)(2), (e).

The first issue presented is whether the Pre-Penalty Notice required by Section 592(b) was invalid in this case because, as stated by defendant in the administrative proceeding, it was not received by defendant and was sent to defendant's former rather than current address. The second inquiry concerns the nature of the penalty claim that the United States is attempting, pursuant to Section 592(e), to recover in this judicial proceeding. The specific issue is whether the claim for penalty brought against Jean Roberts in the administrative penalty, which was stated ambiguously in the Notice of Penalty, was, absent any subsequent mitigation, a claim for a civil penalty at the statutory maximum of two times the potential loss of revenue or, alternatively, a claim for a civil penalty calculated as one time the potential loss of revenue. The court also considers the possible effect of an improper refusal by Customs during the administrative

proceeding to address defendant's claim for exemption from penalty under the Small Business

Regulatory Enforcement Fairness Act of 1996 and defendant's request for mitigation based on

inability to pay. The court concludes that none of the errors committed by Customs in the

administrative penalty proceeding is sufficient to defeat plaintiff's penalty claim or to justify a

penalty in an amount different from that sought in plaintiff's application for judgment by default.

A.  The Record Does Not Demonstrate that the Pre-Penalty Notice Was Procedurally Defective

Section 592(b)(1) provides, with exceptions not here applicable, that Customs, before

issuing a claim for a monetary penalty, shall issue a pre-penalty notice to the person concerned if

it has reasonable cause to believe a violation of Section 592(a) has occurred and allow such

person a reasonable opportunity to make oral and written representations as to why a claim for a

monetary penalty should not be issued. 19 U.S.C. § 1592(b)(1)(A). Jean Roberts made no such

oral or written representations in the administrative proceeding, apparently because it did not

receive the Pre-Penalty Notice.

To determine whether Customs fulfilled the statutory requirements of Section 592(b), the

court has reviewed the documentation attached to plaintiff's application for judgment by default

and related documents from the administrative record of the proceedings that the court requested

and obtained. Upon review of this record, the court became aware that Jean Roberts, in its

petition for mitigation dated May 14, 2001, stated that it did not respond to the Pre-Penalty Notice

because Customs addressed the Pre-Penalty Notice to a former address of Jean Roberts. Pl.'s

Supplemental Documentation Ex. 3 at 2 n.1. The issue that arises, therefore, is whether the Pre-

Penalty Notice was procedurally defective; such is a possibility if the record facts establish that

Jean Roberts did not receive the Pre-Penalty Notice as a result of an error by Customs.

The court notes that Jean Roberts, in stating that it did not receive the Pre-Penalty Notice and pointing out that the Pre-Penalty Notice was sent to a former address of the company, did not expressly state that it was objecting to the Pre-Penalty Notice on the ground of defective notice but simply stated that Jean Roberts had moved from its location in Commerce, California and had been located in Montebello, California for the past three years. *Id.* Ex. 3 at 2 n.1. The Notice of Penalty dated February 26, 2001 also lists for Jean Roberts the old address in Commerce, California. *Id.* Ex. 2.

Jean Roberts did not create an administrative record from which the court could conclude that the apparent irregularity was the fault of Customs. Defendant's petition dated May 14, 2001, states that Jean Roberts had been located in Montebello, California for the past three years and thus indicates that Jean Roberts must have changed location at some point prior to May 14, 1998. *See id.* Ex. 3. However, the most recent entry summary, *i.e.*, Customs Form 7501, that the record contains shows that Jean Roberts, in its submission of entry documentation to Customs, had continued to use the address in Commerce, California as late as July 20, 1998. Pl.'s Application for Default J. Ex. B at 231. In addition, Jean Roberts did respond to the Notice of Penalty with its May 14, 2001 petition for mitigation, indicating that Jean Roberts must have received the Notice of Penalty. *See* Pl.'s Supplemental Documentation Ex. 3. The record does not demonstrate that Jean Roberts properly notified Customs of its change of address when relocating from Commerce, California to Montebello, California. Based on the documentation accompanying the application for judgment by default and the related documents of record, the court cannot conclude that the Pre-Penalty Notice was procedurally defective for having been sent to an invalid address.

B. The Notice of Penalty Gave Adequate Notice of a Claim for Penalty at the Statutory
Maximum Amount of Two Times the Loss of Revenue

The court next considers whether Customs, in the administrative penalty proceeding, perfected a claim for a monetary penalty in the statutory maximum amount of two times the revenue loss, as sought in defendant's application for judgment by default. The penalty claim made by Customs in the administrative penalty proceeding, as stated in the Notice of Penalty, in some circumstances may limit the recovery that the United States may obtain in an action brought in the Court of International Trade to recover on that penalty claim. *See United States v. Optrex America, Inc.*, 29 CIT __, __, Slip Op. 05-160 at 5-6 (Dec. 15, 2005).

The Notice of Penalty Customs issued to Jean Roberts was ambiguous as to whether Customs was claiming a penalty at the statutory maximum of "two times the lawful duties, taxes, and fees of which the United States is or may be deprived," 19 U.S.C. § 1592(c)(3)(A)(ii), or a lesser penalty at one times that amount. *See* Pl.'s Supplemental Documentation Ex. 2. The Pre-Penalty Notice dated November 29, 2000 included the information required by 19 U.S.C. § 1592(b)(1)(A), including the "Proposed Monetary Penalty: $243,017.04 (An amount equal to two times the potential loss of revenue)." *Id.* Ex. 1 at 4. The Notice of Penalty, however, stated the amount of the penalty claim as $121,508.52, an amount that is one-half of the amount of the contemplated penalty stated in the Pre-Penalty Notice. *Id.* Ex. 2. The Notice of Penalty did not identify any change in the potential loss of revenue as determined by Customs and as stated in the Pre-Penalty Notice and in the attached Schedule of Entries, despite the requirement under 19 U.S.C. § 1592(b)(2) that "[t]he written penalty claim shall specify all changes in" the specific information required to be disclosed in a pre-penalty notice, including the requirement under

§ 1592(b)(1)(A)(vi) to specify any change in the "estimated loss of lawful duties." The differing amounts in the Pre-Penalty Notice and the Notice of Penalty indicate that Customs may have intended to issue a Notice of Penalty for two times the potential revenue loss but made a mistake in calculating or transcribing the amount of total penalty. On the other hand, because the Notice of Penalty did not indicate a change in the potential loss of revenue and stated the amount of $121,508.52 as the penalty being claimed, it arguably might have been reasonable to construe the Notice of Penalty as signifying to Jean Roberts that Jean Roberts would be called on to defend itself against a penalty claim in the amount of one times the potential loss of revenue. In this regard, the court notes that Customs itself, in the mitigation decision dated April 19, 2002 that it issued under Section 592(b)(2) and 19 U.S.C. § 1618, construed its own Section 592 administrative penalty claim as a claim in the amount of one times the loss of revenue. *See id.* Ex. 4. The mitigation decision denied any mitigation. Instead, it stated expressly that "the penalty against petitioner is affirmed at one (1) times the loss of revenue, or $121,508.52." *Id.* Ex. 4 at 10. In its application for a default judgment, plaintiff provides no explanation for these multiple errors by Customs and advances no argument as to why the court should overlook them in determining the amount of the penalty for purposes of a judgment by default.

The court concludes, however, that the Notice of Penalty was sufficient to place Jean Roberts on notice that Customs was claiming a monetary penalty at the statutory maximum of two times the loss of revenue. Although the Notice of Penalty stated, on the first page, that "[d]emand is hereby made for payment of $121,508.52, representing penalties assessed against you for violation of law or regulation, or breach of bond, as set forth below," the Notice of Penalty incorporated by reference Exhibit A ("Penalty Statement"), which contained the

following paragraph 5: "Monetary Consequences: . . . A civil, administrative penalty of

$121,508.52, an amount equals [*sic*] to two times of the potential loss of revenue. (Level of

culpability of negligence)." *Id.* Ex. 2. The court concludes that the Exhibit A Penalty Statement

sufficed, albeit barely, to place Jean Roberts on notice that it would be called on to defend itself,

during the administrative proceeding and any judicial proceeding that could follow, against a

claim for monetary penalty in the statutory maximum amount of two times the loss of revenue.

The court's conclusion is grounded in the plain language of the Exhibit A Penalty Statement,

which expressly identified the "monetary consequences" as "[a] civil, administrative penalty of

$121,508.52, an amount equals [*sic*] to two times of the potential loss of revenue." *Id.* For two

reasons, the court attaches greater significance to the statement characterizing the penalty claim

as two times the potential revenue loss than to the statement therein of the penalty amount. First,

the penalty amount was characterized by Exhibit A as having been derived as "two times of the

potential loss of revenue," even though it apparently was derived in error.[2] Second, the Customs

determination of the loss of revenue resulting from the entries that formed the basis for the

penalty claim was subject to change, and did change, during or after the administrative

proceeding; the revenue lost as a result of a Section 592 violation is a factual issue that ultimately

may be resolved *de novo* in a proceeding brought under Section 592(e). *See* 19 U.S.C.

§ 1592(e)(1). Jean Roberts, therefore, was not entitled to rely detrimentally and reasonably could

---

[2] In referring to "potential" revenue loss, Customs apparently was referring to its estimate of revenue loss at some point prior to the liquidation of the entries. At the time it issued the mitigation decision, Customs also issued, under Section 592(d), a demand for payment of duties in the amount of $121,508.52. Pl.'s Supplemental Documentation Ex. 4 at 1.

not assume that the calculation of revenue loss would not change subsequently and that the amount of the civil penalty being sought would not change accordingly.

Because Customs provided adequate notice to Jean Roberts of a civil penalty claim at the statutory maximum for an alleged violation based on a level of culpability of negligence, *i.e.*, at the amount of two times the loss of revenue, this case is readily distinguished from the recent decision of the Court of International Trade in *United States v. Optrex America, Inc.* In *Optrex*, the United States moved to amend its complaint, which sought to recover a civil penalty under Section 592 based on a level of culpability of negligence, to add two additional consumption entries to the summons and to plead additional claims based on the higher levels of culpability of gross negligence and fraud. *Optrex*, Slip Op. 05-160 at 5. Customs had not pursued a penalty based on gross negligence or fraud in the administrative proceeding. *Id.* at 2-4 The court in *Optrex* denied the government's motion to amend the complaint. *Id.* at 15. Employing the traditional rule of statutory construction, *in pari materia*, the court in *Optrex* concluded that all subsections of Section 592, when construed together, require Customs to fulfill certain "administrative procedural requirements" to perfect a penalty claim under Section 592 and to recover in an action brought before the court. *Id.* at 6,8. Specifically, the court in *Optrex* held that the "level of culpability is an inextricable part of a particular penalty claim issued pursuant to § 1592(b)(2), and allowing the government to amend its complaint to include penalty claims that have not been perfected through the administrative process would be contrary to the statutory scheme and the [relevant] statute of limitations." *Id.* at 15; *see United States v. Ford Motor Co.*, 463 F.3d 1286, 1296-98 (Fed. Cir. 2006) (discussing, with approval, *in dicta*, the court's reasoning in *Optrex*). Underlying the analysis in *Optrex* was the necessity of adequate notice to

the party with interests at stake and the purpose of "giv[ing] an importer an opportunity to fully resolve a penalty proceeding before Customs, before any action in [the United States Court of International Trade.]" *Optrex*, Slip Op. 05-160 at 9. In contrast, Jean Roberts was placed on notice of a civil penalty claim at the statutory maximum for a level of culpability of negligence and given the opportunity to resolve, in the administrative proceeding, the potential liability stemming from that penalty claim. Based on the administrative record as a whole, the court concludes that Customs, in its administrative penalty proceeding, perfected a penalty claim based on negligence at the statutory maximum level of two times the loss of revenue.

Plaintiff's complaint and supporting exhibit claim an actual loss of revenue of $121,187.73 and request judgment in the amount of two times that loss of revenue, or $242,375.46. Pl.'s Compl. ¶¶ 9, 12. The court considers *de novo* the amount of the loss of revenue. 19 U.S.C. § 1592(e)(1). Because plaintiff is entitled to a judgment by default, the court determines, for purposes of entering a default judgment, the loss of revenue according to plaintiff's complaint and the attached exhibits, which loss of revenue defendant is deemed to admit.

### C. Plaintiff Did Not Satisfy the Factors Required to Qualify for Exemption from Penalty Pursuant to the Small Business Regulatory Enforcement Fairness Act of 1996

The court next considers the refusal by Customs during the administrative penalty proceeding to consider the claim by Jean Roberts for relief from penalty based on defendant's assertion during that administrative penalty proceeding that it qualified for relief from penalty pursuant to the Small Business Regulatory Enforcement Fairness Act of 1996 and its request for mitigation based on inability to pay. *See* Pl.'s Supplemental Documentation Ex. 4 at 10; *see also*

19 C.F.R. § 171 App. B(G) (2001). In its March 29, 2002 decision on defendant's petition in response to the Notice of Penalty, Customs stated that "[w]e decline to address petitioner's claims of (1) inability to pay; and (2) status as a small business entity under the Small Business Regulatory Enforcement Act of 1996." Pl.'s Supplemental Documentation Ex. 4 at 10. "We note that the statute of limitations in this case will begin to expire on August 29, 2002." Pl.'s Supplemental Documentation Ex. 4 at 10. Customs interpreted petitioner's non-responsiveness to Customs' request for a waiver of the statute of limitations as a refusal to submit the waiver Customs sought, stating that "[s]aid claims will only be addressed if petitioner submits a two-year waiver of the statute of limitations." *Id.* The demand by Customs that defendant waive the applicable statute of limitations for a two-year period in return for any consideration of these two claims for relief was neither justified under the applicable statute and regulations nor consistent with principles of equity and fairness.

The court does not interpret the statute or the regulations to justify, on the particular facts revealed by the record, a refusal by Customs even to consider claims for relief already made in a submitted petition solely because the petitioner has not acceded to demands by Customs for a voluntary waiver of the statute of limitations. The Customs regulations attach certain consequences to an impending expiration of the statute of limitations, including the shortening of the period to file a petition in response to a penalty claim to 7 days. *See* 19 C.F.R. §§ 162.78(a) (2001), 171.2(e), 171 App. B(E)(2)(c); *see also* 19 C.F.R. § 171.64 (providing Customs with the discretion to require a waiver of the statute of limitations as a condition precedent before accepting a *supplemental* petition in cases where the statute of limitations will expire in less than one year). Nowhere do the statute or the relevant regulations provide that Customs may

condition the consideration of issues raised in a petition upon the granting of a statute of

limitations waiver by petitioner, especially where Customs requested the waiver *after* the

submission of the petition. To the contrary, Section 592 directs that Jean Roberts "shall have a

reasonable opportunity under [19 U.S.C. § 1618] to make representations, both oral and written,

seeking remission or mitigation of the monetary penalty" and that "[Customs] shall provide to

the person concerned a written statement which sets forth the final determination and the findings

of fact and conclusions of law on which such determination is based." 19 U.S.C. § 1592(b)(2).

Customs requested the waivers in July and December of 2001, months after Jean Roberts

submitted its May 14, 2001 petition for relief. Pl.'s Supplemental Documentation Ex. 3 & Ex. 4

at 10. Moreover, Customs did not issue its decision until April 19, 2002, nearly a year after the

submission of the petition. *Id.* Ex. 4. In that decision, despite the statutory directive, Customs

simply declined to "set[] forth the final determination" as to those two issues and thereby also

declined to set forth "the findings of fact and conclusions of law on which such determination

[would be] based." *See* 19 U.S.C. § 1592(b)(2). Perhaps there are situations where dilatory

behavior or other action on the part of a petitioner might render such a refusal reasonable on the

part of Customs. In this case, however, Customs was the source of delay. The court cannot

conclude that refusal even to consider claims in the petition, when there was opportunity to do

so, was reasonable or lawful under the statute and pertinent regulations. The court, therefore, has

reviewed the administrative record to consider whether Jean Roberts alleged facts and submitted

sufficient evidence to prove that it qualifies for exemption.

In the Small Business Regulatory Enforcement Fairness Act of 1996, Congress directed

that "[e]ach agency regulating the activities of small entities shall establish a policy or program

within 1 year of enactment of this section to provide for the reduction, and under appropriate circumstances for the waiver, of civil penalties for violations of a statutory or regulatory requirement by a small entity." *See* Pub. L. No. 104-121, § 223(a), 110 Stat 847, 862 (1996). In compliance with the Small Business Regulatory Enforcement Fairness Act, Customs implemented a procedure whereby, under appropriate circumstances, the penalty assessed upon the issuance of a Notice of Penalty under 19 U.S.C. 1592(b)(2) would be waived for businesses qualifying as small business entities. *See Policy Statement Regarding Violations of 19 U.S.C. 1592 by Small Entities*, 62 Fed. Reg. 30,378, 30,378 ("*Policy Statement*").

According to the Policy Statement, "[t]he alleged violator will have the burden of establishing, to the satisfaction of the Customs officer issuing the prepenalty notice, that it qualifies as a small entity . . . ." *Id.* Alternatively, the alleged violator may assert an exemption in its mitigation petition under 19 U.S.C. § 1592(b)(2) upon the issuance of a notice of penalty. *Id.* Small entities may be eligible for a reduction of penalties if (1) the small entity has taken corrective action within a reasonable correction period, including the payment of all duties, fees and taxes owed as a result of the violation within 30 days of the determination of the amount owed; (2) the small entity has not been subject to other enforcement actions by Customs; (3) the violation did not involve criminal or willful conduct, and did not involve fraud or gross negligence; (4) the violation did not pose a serious health, safety or environmental threat; and (5) the violation occurred despite the small entity's good faith effort to comply with the law. *Id.*

In addition to the aforementioned five factors, the Policy Statement requires that in establishing that it qualifies as a small entity, the alleged violator should (a) demonstrate that it is independently owned and operated, *i.e.*, there are no related parties that would disqualify the

business as a small business entity; (b) prove that it is not dominant in its field of operation; and (c) provide evidence, including tax returns for the previous three years and a current financial statement from an independent auditor, of its annual average gross receipts over the past three years, and its average number of employees over the previous twelve months.[3] *Id.*

Defendant asserted that it met all of Customs' requirements for small business status, *i.e.*, that it is independently owned and operated, is not dominant in its field, and has 27 employees. *See* Pl.'s Supplemental Documentation Ex. 3 at 17. Defendant, however, did not adduce sufficient evidence to show that it was entitled to relief under the Policy Statement. The court concludes from a review of the record that the decision by Customs not to consider defendant's claim for exemption under the Small Business Regulatory Enforcement Fairness Act, though impermissible and inconsistent with principles of equity and fairness, was harmless error.

The record does not establish that defendant satisfied the first factor required under the Policy Statement. To the contrary, defendant did not pay the duties, fees and taxes owed within 30 days of the determination of the amount owed. Upon the issuance of the mitigation decision on April 19, 2002, Customs also made a demand for the payment of duties under Section 592(d). Pl.'s Supplemental Documentation Ex. 4. As stated in the complaint and plaintiff's other submissions, Jean Roberts did not pay the duties and its surety, American Contractors Indemnity,

---

[3] The number of employees a business employs is highly determinative in deciding whether the business is, in fact, a small business. Customs' Policy Statement references 13 C.F.R. § 121.201, which is the Small Business Administration's size standards that define whether a business entity is small and, thus, eligible for government programs and preferences reserved for "small business concerns." Size standards have been established under the North American Industry Classification System ("NAICS") for types of economic activity or industry and are published in a manual. Among the chief factors for assessing a company's size within an industry are annual receipts in millions of dollars and the number of employees. *See* 13 C.F.R. § 121.201.

satisfied the total amount of duty liability asserted by Customs.  *See* Pl.'s Compl. ¶ 9; Pl.'s

Supplemental Documentation Ex. 3 at 2.  Defendant thereby failed to qualify for relief from

penalty under the Policy Statement.

Moreover, defendant did not satisfy the additional factors indicated in the Policy

Statement.  Defendant did not submit any evidence that proves it is independently owned and

operated, that there are no related parties, and that Jean Roberts is not dominant in its field.

Furthermore, although defendant submitted what may be construed as financial auditing

statements that satisfy the Policy Statement, those statements indicate that the financial

statements were not produced by an independent auditor as the Policy Statement requires.  *See*

*Policy Statement*; Pl.'s Application for Default J. Ex. A at 23 (disclosing, in an introductory letter

accompanying defendant's financial statements from defendant's accountants, that "[defendant's

accountants] are not independent with respect to the above mentioned company.").  Finally, none

of the evidence submitted substantiates the average number of employees employed by defendant

as required by the Policy Statement.  The failure by defendant to pay the duties owed and the

insufficient factual demonstration by defendant render harmless any error Customs made in

conditioning consideration of defendant's small business exemption claim upon the submission

of a waiver of the statute of limitations.

D.  The Court Declines to Mitigate the Penalty on the Basis of Equitable Considerations

Finally, the court has considered the issue of whether the court should afford mitigation in

determining a penalty amount, due to an inability to pay or any other relevant mitigating factor.

The court has considered the various factors relevant to the question of the penalty to be

assessed.  *See United States v. Complex Machine Works Co.*, 23 CIT 942, 948, 83 F. Supp.2d

1307, 1315 (1999) (identifying fourteen factors relevant to determining the penalty amount); *see also* 19 C.F.R. Part 171 Appendix B(G) (listing the factors that Customs considers in mitigating a penalty amount under Section 592).  Two possible mitigating factors, ability to pay and claimed inexperience in importing, deserve particular mention.

With respect to ability to pay, the court notes, first, that the financial information submitted in defendant's petition dated May 14, 2001 pertains to the financial status of the defendant in years prior to that time and is not probative of defendant's current financial status. *See* Pl.'s Supplemental Documentation Ex. 3.  The other record evidence relevant to the issue of defendant's ability to pay is contained in correspondence sent by the president of Jean Roberts to the Deputy Clerk of the Court of International Trade.  Pl.'s Application for Default J. Ex. A at 22-41.  That correspondence generally addressed the requirement that Jean Roberts obtain counsel in order to enter an appearance.  A letter from the president of Jean Roberts dated July 24, 2003 requested a "public defender" and referred to an appended statement of defendant's accounting firm in support of contentions that the company's losses exceeded $1 million and asserted a net worth for the company of "minus this amount." *Id.* at 22.  The response of the Deputy Clerk of the Court correctly informed Jean Roberts that because Jean Roberts is a corporation, court-appointed counsel was not available and that an attorney admitted before the Court of International Trade must enter an appearance in order for Jean Roberts to make any filings with the court. *Id.* at 32; *see* 28 U.S.C. § 1654 (2000); *see Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993).

A letter from the president of Jean Roberts dated August 13, 2003 informed the Deputy Clerk of the Court of International Trade that Jean Roberts has "a negative net worth of over one

million dollars" and reiterated another point made in the July 24, 2003 letter by stating that "what little assets we have are pledged to Banco Popular." Pl.'s Application for Default J. Ex. A at 33. The letter further states that Jean Roberts has entered bankruptcy proceedings,[4] that its equipment and inventory were pledged to Banco Popular and soon would be liquidated, that the company would go out of business in November 2003, that it has a $15,000 negative balance in its bank account, and that the company could not afford to retain counsel to defend itself in the collection action. *Id.* The correspondence from the president of Jean Roberts and the attached financial statement are relevant to a finding that the financial status of Jean Roberts would support a claim for mitigation of penalty or relief from penalty liability based on inability to pay, and they also provide an explanation for the failure of Jean Roberts to respond to the court's show cause order. *See id.* Ex. A at 33-39.

The court, however, declines to mitigate the penalty amount because of an overriding equitable consideration: the court concludes from the record as a whole that Jean Roberts never made any attempt to fulfill, or even to comprehend, its responsibilities as an importer of record. The administrative penalty proceeding placed Jean Roberts on notice of its responsibilities as an importer. Even after the administrative penalty proceeding was concluded, the president of Jean Roberts still was claiming, in the letter dated August 13, 2003, that Jean Roberts was not the importer of the merchandise, implying that on this basis it should not be held liable. "We have never imported anything or would not have any idea how to import anything, especially when Nova-Tex told us all duties was [*sic*] paid." *Id.* Ex. A at 33. The record contains conclusive

---

[4] In its petition of May 14, 2001, Jean Roberts earlier had stated that it "anticipates having to file for bankruptcy if Customs requests payment of such penalties, as the company has no financial condition to pay for them." Pl.'s Supplemental Documentation Ex. 3 at 16.

evidence that Jean Roberts was the importer of record on the entries that are the subject of this civil penalty action and discloses that Nova Textil Rivera Hermanos y Asociados, S.A. de C.V. was the exporter, not the importer. The letter dated August 13, 2003 reveals that the president of Jean Roberts continued, even after the conclusion of the penalty proceeding conducted by Customs, to fail to understand the responsibilities imposed on an importer under the tariff laws, which include, most basically, the duty to exercise reasonable care when causing merchandise to be imported into the United States. Jean Roberts failed to make even a good faith effort to do so.

The court has reviewed the entire administrative record to ascertain whether, despite the facts as pleaded, which are deemed admitted by defendant, any other basis for mitigation exists, including mitigation according to the various factors cited by Jean Roberts during the administrative penalty proceeding. The court concludes from its examination of the record that there is no other basis that would warrant mitigation or other equitable relief from penalty.

### III. CONCLUSION

From its review of the complaint and plaintiff's application for judgment by default, including the documents appended thereto and the additional documents from the administrative record necessary to resolve issues of law raised by the application for judgment by default, the court concludes that defendant has established its entitlement to a judgment by default against defendant Jean Roberts for a civil penalty under Section 592. Facts pleaded in the complaint relevant to the establishment of liability are deemed admitted, as is the claimed loss of revenue in the amount of $121,187.73. Based on the admitted loss of revenue, the court will grant

plaintiff's application for judgment by default against Jean Roberts in the amount of

$242,375.46, plus post-judgment interest as provided for by law.  The plaintiff shall bear its own

costs.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: December 22, 2006
       New York, New York